UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ARACELI CORONA and JOSE DE JESUS
CORONA, as Co-Personal
Representatives of the Estate of LUZ
MARIA CORONA,

      Plaintiff,

      v.                              CAUSE NO. 2:25-cv-347

HANCOCK REGIONAL HOSPITAL
/d/b/a GREAT LAKES HEALTHCARE
CENTER and COMMUNICARE FAMILY
OF COMPANIES,

      Defendants.

**OPINION AND ORDER**

Plaintiffs, Araceli Corona and Jose De Jesus Corona, are the children of Luz

Maria Corona, who is now deceased. The Coronas bring this action under 42 U.S.C. §

1983 as the personal representatives for their mother against Defendants Hancock

Regional Hospital d/b/a Great Lakes Healthcare Center and CommuniCare Family of

Companies. Hancock Regional Hospital is a county hospital which operates under color

of state law. [DE 1 at ¶¶ 9-10.] Plaintiffs allege that Defendants failed to provide

reasonable and appropriate care to their mother resulting in injuries and ultimately her

death. Defendants have moved to dismiss the suit or, in the alternative, stay the

proceedings pending the completion of medical review panel proceedings. [DE 18.] For

the reasons stated below, Defendants' motion is denied.

**Background**

On August 4, 2022, Luz Maria Corona was admitted to Great Lakes Healthcare Center for nursing services after suffering a stroke. [DE 1, ¶ 18.] Great Lakes is operated and managed by CommuniCare Family of Companies. *Id. at* ¶ 12. Corona was 74 years old at the time, and was suffering from obesity, heart disease, and diabetes. *Id.* ¶ 18. Plaintiffs allege that Great Lakes knew Corona was at risk of developing pressure ulcers and skin breakdown, and that staff represented to them that they were capable of caring for her in light of her medical conditions. *Id.* at ¶ 19. Despite this, when Corona's family visited her on July 17, 2023, they found that she was dehydrated and was suffering from severe pressure sores. *Id.* ¶ 21. Plaintiffs allege that Great Lakes staff was required to implement certain protocols to avoid these issues, including regular repositioning and attention to her fluid intake and nutrition. *Id.* at ¶ 19.

Plaintiffs allege that, as a result of Great Lakes staff failing to provide proper care, Corona developed a severe pressure wound with tunneling. *Id.* at ¶ 23. Plaintiffs further allege that Great Lakes staff failed to properly care for the wound, resulting in it worsening and becoming infected. *Id.* at ¶ 23. On August 3, 2023, Corona was admitted to a hospital, where staff noted that she was suffering from a stage four decubitus ulcer, multiple additional ulcers, septic shock, dehydration, and malnutrition. *Id.* at ¶¶ 25-26. On August 8, 2023, Corona passed away from blood poisoning and an infected pressure ulcer. *Id.* at ¶ 28.

Plaintiffs allege that during the time Corona was a resident of Great Lakes, the facility was understaffed. *Id.* at ¶ 27. According to the Plaintiffs, call lights went

unanswered, and nurses did not respond to the needs of residents. *Id.* Plaintiffs further allege that, during the first quarter of 2022, Great Lakes was below the national average and the required number of registered nurse hours at the facility for 30 of the 88 days. Plaintiffs further allege that the owners and managers of the facility knew it was understaffed yet took no action to correct the deficiency. *Id.*

Defendants tell me that on the same day that this case was filed, Plaintiffs also filed a proposed complaint with the Indiana Department of Insurance pertaining to the same care and treatment provided to Corona. [DE 18, 1-2.] It appears that the state case is one for medical malpractice. By contrast, this case is laser focused on alleged violations of a federal statute—the Federal Nursing Home Reform Act (FNHRA) and its implementing regulations, that Plaintiffs assert are enforceable under 42 U.S.C. § 1983. [DE 1, ¶¶ 29-35.] Defendants have moved to dismiss the case based on a lack of subject matter jurisdiction, improper venue, and a failure to state a claim upon which relief can be granted.

### Legal Standards

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a claim for lack of subject matter jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009); Fed. R. Civ. P. 12(b)(1). The burden of proof is on the party asserting jurisdiction. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003). When considering a motion to dismiss for lack of subject matter jurisdiction, the "district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th

3

Cir. 2007) (quoting *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)). In addition, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's*, 502 F.3d at 625 (quoting *Long*, 182 F.3d at 554).

A dismissal under Rule 12(b)(3) is appropriate when venue is "wrong" or "improper." *Lobodocky v. Medxcel Facilities Mgmt., LLC*, 2024 WL 2320006, at *2 (S. D. Ind. May 22, 2024) (citing *Atlantic Marine Construction, Inc. v. United States Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 55-56 (2013)). According to 28 U.S.C. § 1391(b), there are three ways to establish proper venue in a federal court. One of those ways is if a substantial part of the events giving rise to the claim occurred in the judicial district where the case was filed. 28 U.S.C. § 1391(b).

Lastly, a "motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "It is the defendant's burden to

establish the complaint's insufficiency." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020).

### Discussion

Despite the three separate grounds for dismissal Defendants invoke in the introduction to their motion to dismiss, their briefing only really presents one issue: whether the case should be dismissed or stayed because Plaintiffs have not completed the medical review panel process under the Indiana Medical Malpractice Act. In fact, after the introduction, Defendants' briefing does not mention "venue" or "jurisdiction" again. (Venue is plainly proper here as all of the allegations occurred at Great Lakes' facility in Dyer which is in this district. [DE 1, ¶ 11.])

The Indiana Medical Malpractice Act ("IMMA") defines malpractice as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18.  The Indiana Medical Malpractice Act prevents an action from being brought "in court against a health care provider until both the claimant's proposed complaint has been presented to a medical review panel and an opinion is given by the panel." *Kho v. Pennington*, 875 N.E.2d 208, 211 (Ind. 2007) (citation omitted). Defendants argue that this statute bars the claim in this case until the medical review panel's process has been completed. [DE 18, 2.]

As an initial matter, this is not an issue of subject matter jurisdiction as Defendants assert in the introduction to their motion. *Does 1-4 v. Butler University*, 712 F. Supp. 3d 1154, 1157 (S.D. Ind. 2024) (addressing this point and finding that "state

5

administrative exhaustion requirements are not jurisdictional in federal court.").

"[S]tate law cannot enlarge or contract federal jurisdiction." *Thompson v. Cope*, 900 F.3d

414, 425 (7th Cir. 2018) (quoting *Jarrard v. CDI Telecom., Inc.*, 408 F.3d 905, 909 n.3 (7th

Cir. 2005)). So even though "Indiana courts speak in terms of subject-matter jurisdiction

when dismissing claims that are subject to the Medical Malpractice Act but have not

gone through the medical review panel process," that characterization does not control.

*Id.* at 425. Because there is no subject matter jurisdiction issue as to whether the Court

can adjudicate the claim brought under 42 U.S.C. § 1983, I will proceed to analyze the

issue under Rule 12(b)(6).

Plaintiffs' § 1983 claim rests on its allegation that Defendants' actions and

omissions violated FNHRA, specifically provisions under the section titled

"Requirements relating to residents' rights" found at 42 U.S.C. § 1396r(c) and the

corresponding regulations. [DE 1, 6.] In *Health & Hosp. Corp. v. Talevski*, 599 U.S. 166,

180-81 (2023), the Supreme Court specifically held that two provisions found in 42

U.S.C. § 1396r(c) were enforceable under 42 U.S.C. § 1983. The Supreme Court held this

because the provisions at issue were in a statutory section (the same one at issue here)

that "expressly concern[ed] '[r]equirements *relating to residents' rights*,'" which was

"indicative of an individual 'rights-creating' focus." *Id.* at 184 (quoting 42 U.S.C. §

1396r(c)) (original emphasis from opinion). Further, each provision within 42 U.S.C. §

1396r(c) specifically refers to the *rights* of the residents at issue. 42 U.S.C. § 1396r(c).

For now, Defendants do not attempt to argue that this claim cannot be brought

under § 1983 nor do they attempt to distinguish the facts or particular subsections of §

6

1396r(c) at issue in *Talevski*. Instead, Defendants bypass those points to argue that the claim "although styled as a claim pursuant only to 42 U.S.C. § 1983, is in fact a claim for medical negligence." [DE 18, 4.] But that is simply not the case. Plaintiffs' one-count complaint brings a § 1983 claim, alleging that the Defendants violated FNHRA and its implementing regulations resulting in Mrs. Corona's injuries and death. This claim under § 1983 is not the same as a medical malpractice claim, and this Court will adjudicate the case with strict adherence to the distinct requirements of a § 1983 claim. *See Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties arising out of tort law.").

Plaintiffs brought a federal claim under federal law, which this Court has the power (and duty) to adjudicate under 28 U.S.C. § 1331. The IMMA does not, and cannot, change that. Article VI of the United States Constitution states that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; ... shall be the supreme law of the Land." US Const. art. VI, cl. 2. "The defendant may not use the Indiana Medical Malpractice Act's requirement of presentation of claims to a medical review panel as a means to trump the plaintiff's claim under federal law." *Smith v. Indiana*, 904 F. Supp. 877, 880 (N. D. Ind. 1995); *see also Villegas v. Hancock Regional Hosp.*, 2024 WL 4581170, at *3 (N.D. Ind. Oct 23, 2024) ("Defendant may not use the Indiana Medical Malpractice Act to bar Plaintiff's federal claims under federal law.").

Defendants attempt to distinguish the recent decision from this district in *Villegas v. Hancock Regional Hospital*, which held that a defendant may not use "the Indiana Medical Malpractice Act to bar Plaintiff's federal claims under federal law." *Villegas*, 2024 WL 4581170, at *3. Defendants argue that *Villegas* is not applicable because the plaintiff in *Villegas* only filed a complaint for damages in federal court pursuant to § 1983, while in this case, Plaintiffs also filed a proposed complaint with the Indiana Department of Insurance pertaining to the same care and treatment. Defendants argue that the court in *Villegas* decided "that the Indiana Medical Malpractice Act did not apply because Plaintiff did not assert any claims thereunder." [DE 25, 2-3.] But that's not what the holding was based on. Instead, here's what the court said:

> Defendant's argument that Plaintiff may not bring a federal claim in this Court without first presenting the claim to a medical review panel is, in essence, an argument that state administrative remedies must be exhausted before a federal court may address a federal claim. *See Smith v. Indiana*, 904 F. Supp. 877, 880 (N. D. Ind. 1995). This is not so. Plaintiff has stated a claim against Defendant under a federal law pursuant to this Court's federal question jurisdiction under 28 U.S.C. § 1331. Defendant may not use the Indiana Medical Malpractice Act to bar Plaintiff's federal claims under federal law. *Id.*

*Villegas*, 2024 WL 4581170, at *3. In other words, the *Villegas* decision does not state that the IMMA cannot be used to bar the suit because the plaintiff did not assert a claim under the IMMA.[1] In short, just like *Villegas*, this case is based entirely on federal law, and nothing in the IMMA requires its dismissal.

---

[1] Indeed, such a theory would not make sense, as claims are not made "under" the IMMA in any event. *G.F. v. St. Catherine Hosp., Inc.*, 124 N.E. 3d 76, 84-95 (Ind. Ct. App. 2019) ("The obvious purpose of the [IMMA] was to protect health care providers from malpractice claims ... not to create new and additional causes of action. Were it to create a separate cause of action it would increase the incidence of such claims rather than protect against them.") (internal quotation marks omitted). If a plaintiff brings a state tort

There is one final matter to discuss.  In addition to asking me to dismiss this case, the defendants have also requested, in the alternative, that the matter be stayed pending the outcome of the medical malpractice review process. The problem with this argument is that, although it is mentioned in the title of their motion, the body of their briefing contains no argument as to why I should stay this matter. I therefore view the matter as waived, at least for now. But I will also note that the manner in which the Plaintiffs are pursuing these two matters may be problematic. As I mentioned at the hearing, what the Plaintiffs are doing here, by proceeding in two different forums, sounds a lot like claim splitting. When a plaintiff brings a suit "arising from the same transaction or events underlying a previous suit, simply by a change of legal theory, claim splitting has occurred, and the suit cannot be maintained." *Scholz v. United States*, 18 F.4th 941, 951 (7th Cir. 2021) (internal quotations omitted); *see also Rexing Quality Egss v. Rembrandt Enters, Inc.* 953 F.3d 998, 1002 (7th Cir. 2020). Because this issue was not raised by the Defendants in the briefing, it too is waived, at least for now.

### Conclusion

For the reasons stated above, Defendants' motion to dismiss or in the alternative stay proceedings [DE 18] is DENIED.

**SO ORDERED**.
ENTERED:  July 10, 2026.

/s/Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

---

claim, the IMMA may work as a shield against those state claims; it may not function as a source of a claim.